THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
LUTHER GARTON, PLAINTIFF IN ERROR.

Submitted January 16, 1925—Decided June 15, 1925.

**Crimes—Possession and Sale of Liquor—Defendant Lived at
House of Chief State Witness With Whom He Had Ceased
to be on Good Terms—Evidence Not Strong, but Upon Con-
sideration, No Prejudicial Error Was Found.**

On writ of error directed to the Cumberland County Court
of Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER
and KATZENBACH.

For the plaintiff in error, *George Ebner* (*Rex A. Donnelly*,
of counsel).

For the defendant in error, *Thomas G. Tuso*.

PER CURIAM.

This case has been brought to this court by a writ of error
directed to the Cumberland County Court of Quarter Ses-
sions. The writ brings up for review the conviction of Luther
Garton. Garton was indicted by the grand jury of Cumber-
land county at the September term, 1924. The indictment
charged him with the possession of liquor for beverage pur-
poses, on August 6th, 1924, at Bridgeton, and also with sales
of liquor for beverage purposes during the month of July,
1924, and on the 1st day of August, and every day to August
6th, 1924. The principal witness for the state at the trial of
the indictment was Samuel Swift. It appears that Swift's
mother-in-law had been the housekeeper of Garton. She
died. Garton, who was a livery stable keeper and a man
evidently possessed of more means than Swift, concluded
that he would live at Swift's home. For this privilege Garton
paid the rent of the house occupied by Swift and his family.

He also agreed to buy the groceries. Garton thereafter lived there, occupying the third floor, which he furnished. Swift became jealous of Garton. On the 6th day of August liquor was seized in the house. Out of this grew the indictments for possession and sales. Swift testified that Garton made sales to Andrew Stiles, Hugh Rodman, Daniel Valentine and to Dolph Rodman for William Woolbert. At the trial these parties testified. They denied purchasing the liquor of Garton, with the exception of Daniel Valentine, who admitted it. Swift, prior to the trial, had left his home. Mrs. Swift remained with four children. Garton continued to live there after the departure of Swift. Swift testified that these sales had been made by Garton in the presence of his wife. When Mrs. Swift was called as a witness she denied this, or did not remember having seen the sales made. Garton testified in his own behalf. He denied that he made the sale. The jury evidently believed the testimony of the state's witnesses because they brought in a verdict of guilty.

The case is before us on strict bill of exceptions and also upon specifications of causes of reversal, the entire record being before us. The assignments of error are three in number. The specifications of causes for reversal number twenty-two. Counsel for the plaintiff in error appear to have taken the record of the case and drafted a specification of cause for reversal upon every feature of the case in which they now think the plaintiff in error may have been prejudiced, notwithstanding there was no ruling of the trial court upon the question now raised. This practice is not permitted. There must have been some ruling of the court to make a basis for a specification of cause for reversal under the one hundred and thirty-sixth section of the Criminal Procedure act. *State* v. *Warady,* 77 *N. J. L.* 348.

The first assignment of error deals with a question asked of Samuel Swift on his cross-examination. The question was, "Has your wife been doing something wrong?" The objection to this question was properly sustained. What the witness' wife had been doing, whether right or wrong, was irrelevant and immaterial.

The second assignment of error is that the verdict was against the weight of the evidence. This is also the second specification of cause for reversal. Weighing the evidence under the rules laid down in *State* v. *Karpowitz*, 98 *N. J. L.* 546, we think the verdict is not against the weight of the evidence.

The third assignment of error is that the court refused to direct a verdict for the defendant, after the state had rested its case. There was evidence of possession and sales offered by the state. In this state of the evidence the court could not have properly directed a verdict for the defendant.

Counsel for the plaintiff in error further contend that Garton's case was prejudiced by the cross-examination of Garton by the state's attorney relating to empty kegs, barrels, &c., found in the barn. It is sufficient to say that this cross-examination was permitted without objection on the part of counsel. In the absence of objection we cannot consider whether the plaintiff in error suffered manifest wrong and injury.

The next point considered in the brief for the plaintiff in error is that during the trial there was present in the court room beer barrels and empty whiskey bottles which were continually called to the attention of the jury by questions directed to various witnesses. No objection was made to the presence of these exhibits, which it is claim had nothing to do with the case being tried. In accordance with the ruling already mentioned, we cannot consider the question as to whether the plaintiff in error suffered any manifest wrong or injury by their presence. It was, however, testified to by an officer that the barrels and bottles had nothing to do with the present case, so that it is difficult to see how their presence, in view of this testimony, could have been prejudicial to the defendant below.

The next point made in the brief is that the sale upon which the state relied, if made, was outside of the time mentioned in the indictment. This question was not raised in the court below. The time of the sale was a question of fact to be determined by the jury upon the evidence submitted.

The next point briefed in behalf of the plaintiff in error deals with a question directed to Samuel Katz, a witness for the state, by the court. The same question was also asked upon cross-examination. Katz testified that he never had paid Garton for liquor, and that he had paid Mr. Swift. The prosecutor then moved that this answer be stricken out, and the court struck it out upon the theory that Swift was not being tried. When this action was taken by the court there was no obection made by the counsel for the defendant below to the striking out of the answer of Katz. While in one aspect of the case the trial judge was correct, as it was immaterial who Katz paid, if he did not pay Garton or his agent.. There was no evidence in the case that made Swift Garton's agent in the matter of sales. On the other hand, the answer of the witness Katz did affect the credibility of Swift, and in that aspect of the case it was admissible. As, however, the plaintiff in error made no objection to the evidence being struck out, and there was a sufficient reason for the striking out of the answer, we have, under the circumstances, reached the conclusions that the defendant below did not suffer such manifest wrong or injury by striking out the answer as to entitle him to a new trial.

The final point briefed in behalf of the plaintiff in error deals with certain portions of the court's charge. It is unnecessary to say more than that there was no exceptions taken to the part of the charge now complained of. The course that should have been taken was to have requested the trial judge to charge the law as the counsel for the defendant below thought it should be charged, and then, if the trial court refused to do so, take an exception to the refusal to charge such requests.

Upon a review of the whole case we see no ground which justifies a reversal. The judgment is accordingly affirmed.